United States District Court
Southern District of Texas
**ENTERED**
September 18, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS

| | |
|---|---|
| ROGER C.,[1] | § |
| | § |
| *Plaintiff,* | § |
| | § |
| v. | §  Case No. 4:20-CV-01807 |
| | § |
| KILOLO KIJAKAZI,[2] | § |
| Acting Commissioner of Social Security, | § |
| | § |
| *Defendant.* | § |

## MEMORANDUM AND ORDER

Plaintiff Roger C. filed this suit seeking judicial review of the denial of disability insurance benefits under Titles II and XVI of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in accordance with 28 U.S.C. § 636(c) and filed cross-motions for summary judgement, ECF Nos. 14, 16. Having reviewed the motions, the record, and the applicable law, the Court denies Plaintiff's motion and grants Defendant's motion.

---

[1] Pursuant to the May 1, 2018 "Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions" issued by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court uses only Plaintiff's first name and last initial.

[2] The suit was originally filed against Andrew Saul, the then-Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi has been automatically substituted as Defendant.

## I. BACKGROUND

Plaintiff is 47 years old, R. 45, 73,[3] with a high school diploma. R. 245. Plaintiff served in the United States Marine Corps for three years before working as both a security guard and a sales manager. R. 80, 90, 104, 114, 252. Plaintiff has not returned to work since December 20, 2017, due to his impairments. R. 244. According to Plaintiff, following a stroke in February 2017, he continues to suffer from left-sided paralysis and difficulty moving. R. 268. Plaintiff claims his impairments prevent him from performing daily activities without assistance and left him with limited social skills. R. 270–74.

On March 13, 2018, Plaintiff filed his applications for disability insurance benefits under both Titles II and XVI of the Act. R. 15. He based his application on stroke and hypertension. R. 244.[4] The Commissioner denied his claims initially, R. 29, and on reconsideration, R. 121–26.

A hearing was held before an Administrative Law Judge ("ALJ"). R. 35. An attorney represented Plaintiff at the hearing. *Id.* Plaintiff, two medical experts,[6] and a vocational expert testified at the hearing. R. 37. The ALJ issued a decision denying

---

[3] "R." citations refer to the electronically filed Administrative Record, ECF No. 11.

[4] The relevant time period is December 19, 2017—Plaintiff's alleged onset date—through December 31, 2022—Plaintiff's last insured date. R. 18. The Court will consider medical evidence outside this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014); *Loza v. Apfel*, 219 F.3d 378, 396 (5th Cir. 2000).

[6] A psychiatrist and internist both testified at the hearing as impartial medical experts. R. 15.

2

Plaintiff's request for benefits. R. 12–14.[7] The Appeals Council denied Plaintiff's request for review, thus upholding the ALJ's decision to deny disability benefits and supplemental security income. R. 1–3; *see Sims v. Apfel,* 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the Commissioner's final decision).

On May 22, 2020, Plaintiff filed this lawsuit, challenging the ALJ's decision

---

[7] An ALJ must follow five steps in determining whether a claimant is disabled. 20 C.F.R. 404.1520(a) and 416.920(a). The ALJ here determined Plaintiff was not disabled at step five. At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of December 19, 2017, through her date last insured of December 31, 2022. (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*). R. 18. At step two, the ALJ found that Plaintiff has the following severe impairments: status post cerebrovascular accident and hypertension (20 C.F.R. 404.1520(c) and 416.920(c)). R. 18. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). R. 18. The ALJ found that Plaintiff has the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). Specifically, the ALJ found that Plaintiff can occasionally lift and carry 20 pounds, 10 pounds frequently; stand/walk for a total of 2 to 8 hours for a full 8-hour workday with normal breaks; and sit for a total of 6 to 8 hours for a full 8-hour workday with normal breaks. R. 18. The ALJ also limited Plaintiff to frequent pushing and pulling with the left upper extremity; unable to climb ladders, ropes, or scaffolds and balance; and could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. R. 18. The ALJ also found Plaintiff to be unable to perform work around hazardous, unguarded machinery or work at unprotected heights and limited to frequent fine manipulation with the left upper extremity. R. 18. The ALJ did not find any established visual, communicative, or mental limitations. R. 18. At step four, the ALJ determined that through the date last insured, Plaintiff was unable to perform and past relevant work. (20 C.F.R. 404.1565 and 416.965). R. 22. At step five, the ALJ concluded that through the date last insured considering Plaintiff's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform including order clerk, charge account clerk, and optical goods worker. (20 C.F.R. 404.1569, 404.1569a, 416.969, and 416.969a). R. 23. Therefore, the ALJ concluded that Plaintiff was not disabled. R. 24.

and seeking remand. Pl.'s MSJ, ECF No. 14. Defendant's cross-motion contends that the ALJ's findings are proper and supported by substantial evidence. Def.'s MSJ, ECF No. 16.

## II. STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner… as to any fact, if supported by substantial evidence, shall be conclusive[.]

*Id.*

Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence on the record as a whole and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001); *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotations omitted). It is "more than a scintilla but less than a preponderance." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). The "threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

The Court weighs four factors to determine "whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history." *Conley-Clinton v. Saul*, 787 F. App'x 214, 216 (5th Cir. 2019) (citing *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995)).

A reviewing court may not reweigh the evidence in the record, try issues *de novo*, or substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). However, judicial review must not be "so obsequious as to be meaningless." *Id*. (quotations omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 822–23 (5th Cir. 1986); *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). Rather, a reviewing court must scrutinize the record as a whole, considering whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Singletary*, 798 F.2d at 823.

### III. BURDEN OF PROOF

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving her disability. *Johnson v. Bowen*, 864 F.2d 340, 343–

5

44 (5th Cir. 1988). The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d) (1)(A) (2000). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3) (2000). The impairment must be so severe that the claimant is "incapable of engaging in any substantial gainful activity." *Foster v. Astrue*, No. H-08-2843, 2011 WL 5509475, at *6 (S.D. Tex. Nov. 10, 2011) (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)). A claimant is eligible for benefits only if the onset of the impairment started by the date the claimant was last insured. *Id.* (citing *Ivy v. Sullivan*, 898 F.2d 1045, 1048 (5th Cir. 1990)).

The Commissioner applies a five-step sequential process to determine disability status. *Farr v Astrue*, No. G-10-205, 2012 WL 6020061, at *2 (S.D. Tex. Nov. 30, 2012). The claimant bears the burden of proof at the first four steps to establish that a disability exists. *Id.* The burden shifts to the Commissioner at step five to show that the claimant can perform other work. *Id.* The burden then shifts back to the claimant to rebut this finding. *Id.* If at any step in the process the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Id.*

**IV. DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT.**

Plaintiff raises a single issue that the ALJ RFC's determination is unsupported by substantial evidence because she failed to properly weigh the opinion of Toby Kirkwood, D.O., a consulting examining physician. ECF No. 15 at 1. Defendant contends that substantial evidence supports the ALJ's RFC analysis and step five finding. ECF No. 17 at 5.

**A. The ALJ Properly Conducted The RFC Analysis In Accordance With The New Guidelines.**

Under the new rule regarding RFC determinations, the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. 20 C.F.R. § 404.1520c(a).[8] Instead, the ALJ is required to consider all medical opinions and prior administrative medical findings using specific factors: (1) supportability; (2) consistency; (3) the physician's relationships with the claimant, which includes considering the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) the physician's specialization, and (5) other factors. 20 C.F.R.

---

[8] For claims filed after March 27, 2017, the new guidelines have eliminated the former requirement that the ALJ give deference to the opinions of treating physicians. *Garcia v. Saul*, No. SA-19-CV-01307-ESC, 2020 WL 7417380, at *4 (W.D. Tex. Dec. 18, 2020) (explaining that despite new regulations, previous decisions are still relevant as supportability and consistency have always been the most important considerations.). These claims were filed on March 13, 2018, falling under the new guidelines. R. 15.

7

§ 404.1520c(b).[9] The most important factors are consistency and supportability. *Id.; Garcia*, 2020 WL 7417380, at *4. Under the new guidelines, the ALJ must articulate how persuasive he finds each of the opinions in the record. 20 C.F.R. § 404.1520c(b).

### 1. *The ALJ properly considered the conflicting medical evidence.*

Despite Plaintiff's allegations to the contrary, the ALJ properly considered Dr. Kirkwood's opinion. R. 21. Specifically, the ALJ found Dr. Kirkwood's opinions—that ambulation would be difficult because Plaintiff still had weakness in his left leg and balance issues; that Plaintiff could lift and carry objects with his right hand only; and that Plaintiff could handle objects, but fine dexterity in his left hand was decreased—were not persuasive or supported by the record. R. 21.[10]

In reaching this conclusion, the ALJ discussed Plaintiff's daily activities. R. 21. Specifically, the ALJ noted Plaintiff independently performed all activities of daily living, including practicing yoga regularly, preparing meals, and carrying out household chores R. 21.[11] The ALJ found these activities to be inconsistent with

---

[9] Other factors include evidence that the medical source is familiar with the other evidence, or that the medical source understands the disability program's policies and evidentiary policies. *Id*.

[10] Dr. Kirkwood performed a one-time consultative exam in May 2018 and provided an analysis of Plaintiff's limitations. R. 405–07 (5/23/18). In addition, Dr. Kirkwood assessed Plaintiff's grip strength was a 5/5 in the left hand but significantly weaker than the right hand. *Id*. Dr. Kirkwood also observed Plaintiff's ability to speak was distinct, intelligible, and within normal limits, consistent with an acute stroke event. R. 407.

[11] R. 269–76 (Plaintiff completed an SSA function report which describes information about his daily activities). The ALJ elsewhere noted that, in December of 2018, Plaintiff reported to his treating physician that he completed his activities of daily living independently and ambulated independently but used a cane sometimes. R. 20.

8

Dr. Kirkwood's opinions of Plaintiff's limitations. R.21.

In contrast, the ALJ found the record supported and was consistent with the medical opinions of the two state agency reviewing physicians, Dr. Ligon and Dr. Rosenstock. R. 21.[12] Both opined that Plaintiff could lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds and could sit with normal breaks for a total of 6 hours in an 8-hour workday, but only stand and/or walk for a total of 3 hours in an 8-hour workday. R. 78–88; 102–12. Additionally, both physicians found the objective medical records did not substantiate Plaintiff's statements about the intensity, persistence and functionally limiting effects of his symptoms. R. 77, 87, 101, 111. She found these opinions to be generally persuasive but that additional limitations were warranted, relying on the testimony of the independent medical expert. R. 21.

The ALJ found the opinion of the testifying medical expert, Dr. Amusa, a Board-certified internist, was persuasive and supported by the record as a whole. R. 22. Dr. Amusa testified that, during the relevant time-period, Plaintiff had the ability to occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds; stand and walk 2 of 8 hours for a full 8-hour workday each, with normal

---

[12] In May 2018, State Agency reviewing physician, Dr. Laurence Ligon, also opined that Plaintiff could never to climb ladders, ropes, or scaffolds; occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. Dr. Ligon also opined that Plaintiff displayed no manipulative, visual, communicative, or environmental limitations. R. 78, 88 (5/31/18). Dr. Rosenstock's opinion affirmed Dr. Ligon's opinion. R. 102, 112 (8/15/18).

9

breaks, and sit 6 of 8 hours for a full 8-hour workday, with normal breaks. R. 58–60 (6/11/19).[13] Neither Dr. Ligon, Dr. Rosenstock, nor Dr. Amusa found Plaintiff to be incapable of carrying objects with his left hand.

Plaintiff does not agree with the weight afforded to Dr. Kirkwood's opinion and would have this Court reweigh the evidence or remand for the ALJ to do so. The court may not substitute its opinion for the ALJ's, no matter how much it views the evidence differently. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). The ALJ is the sole arbiter of the credibility of the witnesses. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The ALJ, not the courts, must resolve conflicts in the medical opinions. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). For this reason, courts afford great deference to the ALJ's consideration of credibility. *Chambliss*, 269 F.3d at 523. Considering the factors of consistency and supportability, the ALJ properly weighed Dr. Kirkwood's opinion, finding it was inconsistent with Plaintiff's activities and the other medical opinions of record.[14]

---

[13] Dr. Kweli Amusa reviewed the evidence and opined that Plaintiff's impairments did not meet any of the listings. R. 58. Dr. Amusa also opined that the claimant is limited to frequent pushing and pulling with the left upper extremity; unable to climb ladders, ropes, or scaffolds or balance; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; and limited to frequent fine manipulation with the left upper extremity. R. 58–60 (6/11/19).

[14] The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2).

## *2. Substantial evidence supports the ALJ's RFC determination.*

When assessing an applicant's RFC, the ALJ must discuss the evidence presented and explain why she did or did not find the applicant to be disabled. 42 U.S.C. § 405(b)(1). What Plaintiff claims to be "picking and choosing" of the evidence, is the ALJ deciphering the record and determining Plaintiff's limitations based upon the medical records, the medical opinions, Plaintiff's testimony, and daily activities. R. 18–22.

In limiting Plaintiff to light work, the ALJ observed that the medical records presented predominantly normal reviews. R. 19–20. Plaintiff presented with left-side weakness and slurred speech in February 2017 following his stroke. R. 19 (referencing R. 351). At his follow-up in March 2017, however, the exam was relatively normal, as records indicate in both March 2017 and April 2017. R. 19 (referencing R. 327–39). The ALJ stated that Plaintiff did not seek further treatment until July 2018, at which point Plaintiff reported struggling with balance issues. R. 19 (referencing R. 419). Yet, Plaintiff presented as relatively normal in his examination. R. 19 (referencing R. 419–24). In October 2018, Plaintiff admitted that he had not contacted a physical therapist although he reported that he struggled with balance. R. 19 (referencing R. 450). Further, in December 2018, Plaintiff reported that he was able to ambulate independently, used his cane at times, and denied any complaints of pain. R. 19 (referencing R. 470–79).

11

The ALJ also considered that Plaintiff applied for and received unemployment benefits during the same period for which he sought disability benefits. R. 21. The ALJ found that an application for unemployment is evidence that the individual holds himself out as capable of working full time. R. 21; *see* 20 C.F.R. § 404.1512, *et seq*. Plaintiff testified that he actively sought full-time employment as part of the unemployment benefits requirements. R. 46–52. The ALJ found that this presented a conflict between Plaintiff's representation to Texas that he is capable of full-time work and his representation to the Commissioner that he is not, which the ALJ had to consider with the other evidence. R. 21.

Substantial evidence supports the ALJ's RFC determination.

**B. The ALJ's Hypothetical Questions Encompassed Every Recognized Limitation at Step Five.**

Plaintiff claims that the ALJ posed an incomplete hypothetical to the vocational expert because she failed to ask how the use of an assistive device would affect Plaintiff's RFC or include the other limitations in Dr. Kirkwood's opinion. ECF No. 15 at 15. Plaintiff argues that the ALJ's incomplete hypothetical yielded an erroneous decision that Plaintiff was not disabled. ECF No. 15 at 16.

An ALJ need only incorporate into the hypothetical questions those claimed disabilities the ALJ recognizes and finds the record supported. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002) (affirming ALJ's decision to omit questions concerning limitations the ALJ did not recognize). The hypothetical

questions posed to the vocational expert must be said to "incorporate reasonably all disabilities of the claimant recognized by the ALJ." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If not, the ALJ must provide an opportunity to Plaintiff or Plaintiff's counsel to correct any deficiencies. *Id*. (remanding when hypothetical questions did not include every limitation, and no opportunity was provided for Plaintiff to correct the deficiencies).

Contrary to Plaintiff's assertion, the hypotheticals posed to the vocational expert incorporated every physical limitation the ALJ found the record supported.[15] Considering that the ALJ found Dr. Kirkwood's opinion not supported by the record, she was not required to include his opinions on Plaintiff's limitations when posing hypothetical questions to the vocational expert. *Hernandez v. Astrue*, 269 F. App'x 511, 515 (5th Cir. 2008) (affirming ALJ's step five finding when she relied on hypothetical questions that contained only those limitations included in the RFC).[16]

---

[15] In the hypothetical to the vocational expert, the ALJ asked whether there is any work available for a person that is the same age, education, and vocational history as Plaintiff and capable of the following: This person can lift and carry 20 pounds occasionally, and 10 pounds frequently. This person can stand and walk with normal breaks for a total of about 2 hours in an 8-hour workday. This person can sit with normal breaks for a total of about 6 hours in an 8-hour workday. This person is limited to frequent pushing and pulling with the left upper extremity. Regarding postural limitations, this person can occasionally climb ramps and stairs, can occasionally stoop, kneel, crouch, and crawl. But this person can never climb ladders, ropes, and scaffolds. This person can never balance. Regarding manipulative limitations, the person is limited to frequent fine manipulation with the left upper extremity. There are no established visual, communicative, or mental limitations. Regarding environmental limitations, this person is unable to perform work around hazardous, unguarded machinery, or work at unprotected heights. R. 66–68.

[16] "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for the device to aid in walking or standing and describing the circumstances for which it is needed." SSR 96-9P, 1996 WL 374185, at *7 (July 2, 1996);

13

Furthermore, Plaintiff had an opportunity to correct any defect in the hypothetical through questions to the vocational expert. Following the ALJ's questions to the vocational expert, the ALJ asked Plaintiff's attorney, "Counsel, do you have questions?" to which Plaintiff's attorney responded, "Nothing further, Your Honor." R. 69. Thus, the ALJ did not commit reversible error for omitting limitations in the hypothetical question when Plaintiff's attorney was afforded an opportunity to correct deficiencies. *See Bowling*, 36 F.3d at 436 (finding no reversible error if a plaintiff or her representative has an opportunity to correct deficiencies in the hypothetical question); *Stephens v. Astrue*, No. H- 10-3251, 2011 WL 6826828, at *10–11 (S.D. Tex. Dec. 28, 2011) (same).

---

*Temple v. Saul*, No. 4:19-cv-3320, 2020 WL 6075644, at *3 (S.D. Tex. Oct. 14, 2020). When determining whether a hand-held assistive device is medically necessary, an ALJ must consider "the particular facts of a case" based on the evidence of the need for the device and the circumstances for which it is needed. *Temple*, 2020 WL 6075644, at *3. The ALJ errs when she ignores medical records documenting a plaintiff's need for an assistive device. *Id.* (remanding when ALJ ignored medical records documenting need for assistive devices). Although in May 2018, Dr. Kirkwood opined that Plaintiff needed a cane to ambulate, the ALJ observed that the medical records reflect that Plaintiff reported to his treaters in December 2018 that he only needed his cane at times. R. 20. Moreover, the regulations provide that even someone who uses a medically required hand-held device may be able to perform the minimal lifting and carrying requirements of sedentary work. SSR 96-9P, 1996 WL 374185, at *7 (emphasis added). Although the RFC limited Plaintiff to light work with limitations, the three jobs the VE testified Plaintiff could perform were at the sedentary work level. R. 68; *see* ECF No. 15 at 2 (Plaintiff states ALJ found he could perform the three sedentary jobs of order clerk, charge account clerk, and optical goods worker).

## V. CONCLUSION

The Court **GRANTS** Defendant's motion for summary judgment, ECF No. 16, and **DENIES** Plaintiff's motion for summary judgment, ECF No. 14. Commissioner's determination that Plaintiff is not disabled is **AFFIRMED**. Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

Signed at Houston, Texas, on September 18, 2021.

_____
**Dena Hanovice Palermo**
**United States Magistrate Judge**